# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Columbus Ale House, Inc. d/b/a "The Graham," *Plaintiff* v. Andrew M. Cuomo, *in his official capacity as Governor of the State of New York*, *Defendant* | Case No. 20-CV-4291  COMPLAINT |

## INTRODUCTION

1) The food service industry in New York has tirelessly worked, in good faith, to provide as safe of an environment for New Yorkers as possible during the current global pandemic, in accordance with state and federal guidelines.

2) Instead of providing aid to an industry they have rightfully declared "essential," the state has promulgated, and continues to promulgate, a myriad of constantly changing and unworkable rules, regularly fining establishments thousands of dollars at a time for hyper-technical violations that did not exist days earlier.

3) The latest rule ordered by Defendant Andrew M. Cuomo ("Cuomo") on September 9th, 2020, to go into effect 3 weeks thereafter, establishes a "food curfew," requiring that New York City restaurants close by midnight each night, despite the fact that coronavirus does not behave as a vampire, infecting others only when the moon is out.

4) Plaintiff Columbus Ale House, Inc. d/b/a The Graham ("The Graham") is a food service establishment in Brooklyn, NY, that is desperately struggling to pay its rent, having been ordered by Cuomo to discontinue indoor dining for a full 6 months, and now starting

- 1 -

September 30th, 2020, is allowed indoor dining at 25% capacity – until midnight when it must boot its customers out the door.

5) The Graham traditionally generated a substantial amount of its revenue after midnight and faces extreme financial hardship as a result of Cuomo's new rule, which lacks any real or substantial relationship to stopping the spread of coronavirus, and instead actually makes the situation *worse*, as shrinking the hours during which New Yorkers can get a meal will result in more crowding during the fewer remaining hours.

## PARTIES

6) Plaintiff Columbus Ale House, Inc. operates THE GRAHAM at 151 Meserole St., Brooklyn, NY.

7) Defendant Andrew M. Cuomo is the Governor of the State of New York. Cuomo is sued in his official capacity.

## JURISDICTION & VENUE

8) Personal jurisdiction is proper because the defendant is the chief executive of the state in which this federal court sits, and is sued in that capacity. Mr. Cuomo also lives within the State of New York.

9) Subject matter jurisdiction is proper because the constitutional claim arises under federal constitutional law. *See* 28 U.S.C. § 1331.

10) Subject matter jurisdiction is proper over the state law claim under the Court's supplemental jurisdiction. *See* 28 U.S.C. § 1367.

11) Venue is proper because the governmental conduct of which Plaintiffs complain affects Plaintiff primarily within the boundaries of this district.

## ALLEGATIONS OF FACT

### Section I: Overview of the Coronavirus Outbreak

12) Coronavirus is a pathogen first found to be affecting humans at some point in 2019.

13) The first known appearance of the virus was in China, after which it spread both west to Europe and east to the United States.

14) Infections in the United States are first known to have appeared in Washington State in January and then New York in March.

15) Within one month of New York's first case, all 50 states reported infections of coronavirus.

16) It is no surprise that New York City, with its dense population and close contact in its massive public transportation system, became a hotspot of infections.

17) By end of March, New York reported nearly 100,000 infections and over 2,000 deaths, far surpassing any other state and most countries in the world.

18) New York saw its peak of coronavirus deaths on April 7th, 2020, having reported <u>799</u> New Yorkers passed away from the virus on that date.

19) Since then, daily coronavirus deaths in New York have rapidly declined to <u>4</u> reported September 14th, 2020, a 99.5% reduction from peak.

20) A total of approximately 450,000 New Yorkers, or 2.4% of the population, have tested positive for coronavirus as of the date of the docketing of this lawsuit – in addition, of course, to those who are (or were) positive but untested.

## Section II: Effect on the Food Service Industry

21) On March 7th, 2020, the Governor declared a state of emergency relating to the coronavirus outbreak that continues through the date of filing of this complaint.

22) By March 17th, 2020, every food service establishment[1] in the state had been ordered, pursuant to the Governor's emergency powers, to shut its doors to customers, limiting them to takeout and delivery service only (larger venues had been closed days earlier).

23) Over the six months since the mass closure, the state and its political subdivisions have slowly allowed "phased" reopening of many industries, including the food service industry.

24) As of current, establishments in New York City are allowed takeout, delivery, and outdoor dining only: no customers are allowed indoors other than to use bathrooms.

25) As of current, establishments in the remainder of New York State are allowed the same *plus* indoor dining at 50% capacity[2].

26) However, all establishments have been required to comply with a substantial body of new rules, promulgated by the Governor and his administrative agencies, under his purported authorization to do so during a state of emergency.

27) Some of these rules are simple, straight-forward, and common sense: mask requirements, social distancing requirements, hand sanitizer, employee health checks, *etc*.

28) Other rules have been arbitrary, constantly changing, and subject to enforcement before establishments had a chance at compliance, or even required results that were beyond the control of establishments.

---

[1] For the remainder of this document, "establishments" refers exclusively to "food service establishments."

[2] Whether indoors or outdoors, capacity is severely reduced due to social distancing minimums (*e.g.*, 6 feet between tables) as well as hard numerical caps (*e.g.*, a percentage of legal fire code capacity).

29) For example, before the pandemic, food service establishments selling alcohol only needed to *offer* food for sale. Then, pandemic rules required the sale of some food with every purchase of alcohol. Then, the Governor announced that full meals were required in order to purchase alcohol, declaring that traditional bar food items like chicken wings "don't count." Then, the SLA retreated on that, declaring that any foods more substantial than chips and popcorn will suffice.

30) In the meantime, establishments frequently spent tens of thousands of dollars modifying their kitchen, venting, indoor & outdoor seating, menus, promotional materials, staffing, and the like, only to have their expensive modifications prove outdated and futile within days.

31) Establishments that have been found selling alcohol without strict compliance with each and every rule, including government-approved food with each beer, whisky, or cocktail order, have had their liquor licenses suspended, effectively destroying their business, .

### Section III: The Governor's Midnight "Food Curfew"

32) On September 9th, 2020, Cuomo, during a press conference, announced that indoor dining would finally be allowed in New York City starting September 30th, 2020.

33) However, there are a plethora of new conditions: 25% maximum capacity, air filtration requirements, temperature checks and contact tracing documentation for customers (in addition to existing requirements for staff), *etc*.

34) This is in addition to all existing requirements already imposed: social distancing, masks when not at tables, food purchase required before alcohol purchases, all patrons are required to be seated except as necessary to enter, leave, or use the bathroom, no bar seating, *etc*.

35) While all of the requirements listed above have at least some obvious relation to reducing the spread of coronavirus, one new condition does not: that all restaurants must close by midnight.



*Figure 1: Tweet by Cuomo announcing indoor dining with new rules.*

36) No study of which Plaintiff can find has suggested that indoor coronavirus transmission is greater during the evening than during the day.

37) No study of which Plaintiff can find has suggested that a city that implemented an earlier restaurant closing time saw fewer infections as a result.

38) No reason for this particular rule has been publicly shared by Cuomo or any other government official of which Plaintiff is aware.

39) No attempt was made to collaborate with the industry to create solutions to whatever problem Cuomo thinks he is solving with this rule.

40) Upon information and belief, the midnight closing time was chosen arbitrarily by Cuomo.

41) Restaurants in the rest of New York State, other than New York City, have been allowed indoor dining at 50% capacity and without the midnight rule for months.

42) In fact, the requirement of an earlier closing time actually *helps coronavirus to spread*.

43) This is because a "food curfew" is likely to cause many who would have gone to get food after midnight to do so before midnight, thus making the hours before midnight more crowded.

### Section IV: Application & Injury to Plaintiff

44) The Graham, after operating for about a decade, was forced to shutter by order of the Governor, along with every other restaurant, on March 17th, 2020.

45) As soon as it could (April 2020), The Graham began takeout and delivery service, trying its best to survive while faithfully complying with all COVID-19-related restrictions applicable to it.

46) However, takeout and delivery could not generate even close to enough net revenue to pay its rent and staff.

47) As soon as it could (June 2020), The Graham began outdoor dining, continuing to attempt to survive while faithfully complying with all COVID-19-related restrictions applicable to it.

48) However, even with outdoor dining, takeout, and delivery, The Graham could not generate even close to enough net revenue to pay its rent and staff.

49) Before March, The Graham derived a substantial percentage of its revenue from after-midnight sales.

50) The Graham reasonably expects that would continue to see a substantial percentage of its revenue come from after-midnight sales, were it allowed to stay open.

51) Were The Graham allowed to serve on-premise after midnight, it would immediately do so.

52) With outdoor dining coming to a close in October (currently by order of New York City, but as a practical matter, outdoor dining is not practical during the winter anyway), The Graham does not expect indoor dining at 25% to produce any more revenue than outdoor dining did.

53) Without the challenged rule, The Graham would stand a chance of being able to pay its bills; with the challenged rule, it will be a matter of months before The Graham will be forced to permanently close its doors.

54) In addition to selling food, The Graham sells alcoholic beverages and has an active license issued by the state to do so.

55) The New York State Liquor Authority has indicated that it is willing to suspend liquor licenses of establishments who are open after the Governor's directed hours, having already suspended the licenses of many establishments for operating outdoor dining after allowed hours.

56) The Graham, therefore, reasonably expects that non-compliance with Cuomo's rule would lead to the suspension and possible revocation of its liquor license.

57) Such a penalty would leave The Graham no choice but to permanently close its doors and declare bankruptcy.

## CLAIMS FOR RELIEF

### Count 1 –Fifth/Fourteenth Amendment to the U.S. Constitution
*Substantive Due Process*

58) The Due Process clauses of the Fifth Amendment to the U.S. Constitution, as incorporated against the states by the Fourteenth Amendment, and the due process required by the Fourteenth Amendment itself, prohibit the arbitrary curtailment of the right of Plaintiff to do lawful business.

59) The Constitution allows for curtailment of this right, in the context of protection of public health, only if there is a "real or substantial relation" between the goal and the restriction. *Jacobson v. Massachusetts*, 197 U.S. 11, 31 (1905).

60) There is no discernable public health benefit to forcing all restaurants to close at midnight.

61) There is no discernable public health reason why midnight is the hour at which restaurants should close.

62) On the other hand, these rules threaten to cause the permanent destruction of the Plaintiff, a severe interference with its constitutional rights.

63) Defendant Cuomo has therefore infringed upon Plaintiffs' substantive due process rights under the Fifth and Fourteenth Amendments to the U.S. Constitution.

## Count 2 – New York "Article 78" Review
### *Arbitrary & Capricious Action by a New York Governmental Officer*

64) Article 78 of the New York Civil Practice Law & Rules prohibit officers of the state from taking actions that are "arbitrary and capricious or an abuse of discretion." N.Y. CPLR § 7803(3).

65) The decision that Plaintiff must close its doors by midnight every night is arbitrary because 1) there is no legitimate basis to conclude that earlier closings mean fewer transmission of coronavirus, 2) there is no legitimate basis to conclude that midnight is the time at which closure should be completed, and 3) there is no legitimate basis to conclude that New York City requires this "special" rule while the rest of the state does not.

66) Implementing the rule without any explanation, solicitation of industry or public feedback, or evidence that the rule needed rapid implementation because of a *new* emergency or new evidence come to light, not to mention in the absence of legislative direction, was an abuse of discretion.

67) The Court should therefore annul the rule pursuant to N.Y. CPLR § 7806.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

i. Declaratory relief stating that the "midnight rule" discussed herein is facially unconstitutional.

ii. Annulment of the SLA's "midnight rule" pursuant to Article 78.

iii. Injunctive relief ordering that Defendant Cuomo and his agents be restrained from enforcing the unconstitutional rules discussed herein and restrained from issuing or enforcing substantially-similar orders.

iv. Cost of the action.

v. Reasonable attorney's fees.

vi. Any other such relief as the Court deems appropriate.

Dated: Brooklyn, NY
      September 14th, 2020

Respectfully submitted,

          */s/Jonathan Corbett*
Jonathan Corbett, Esq.
Attorney for Plaintiffs (*pro hac vice* pending)
CA Bar #325608
958 N. Western Ave. #765
Hollywood, CA 90029
E-mail: jon@corbettrights.com
Phone: (310) 684-3870
FAX: (310) 675-7080