UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
COLUMBUS ALE HOUSE, INC.
*doing business as* "The Graham,"

             - against -

ANDREW M. CUOMO,
*in his official capacity as Governor of the State of New York*

             Defendant.
----------------------------------------------------------- X

**MEMORANDUM OPINION**

20-cv-4291 (BMC)

**COGAN**, District Judge.

    Plaintiff sought a preliminary injunction enjoining defendant, the Governor of the State of New York, from enforcing a rule prohibiting service after midnight in New York City food service establishments. Plaintiff claimed that the rule violates its substantive due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and is an arbitrary and capricious action under N.Y. C.P.L.R. Article 78.

    At the conclusion of a hearing on October 6, 2020, I denied plaintiff's motion for a preliminary injunction on the record, stating that I would later file a written opinion. This is that opinion.

## BACKGROUND

**I.    COVID-19 and New York's Pandemic Restrictions**

    The novel coronavirus, SARS-CoV-2, and its associated disease, COVID-19, need no introduction. This potentially lethal virus has no known cure, no particularly effective treatment, and no vaccine. So far this year, it has infected over 250,000 people and killed nearly 24,000

Case 1:20-cv-04291-BMC   Document 20   Filed 10/16/20   Page 2 of 12 PageID #: 382

people in New York City alone.[1] The United States has seen over 7.8 million cases and over 215,000 deaths.[2] At the height of the pandemic in New York City, over 18,000 people were hospitalized and 800 people died per day.[3]

      COVID-19 transmission increases when people are in close contact because the virus spreads through contact, respiratory droplets, and aerosols.[4] Airborne transmission of the virus, in which infection spreads through exposure to small droplets and particles that can remain suspended in the air for hours, is more likely to occur in enclosed spaces and with prolonged exposure.[5] To slow the spread of COVID-19, the Centers for Disease Control and Prevention recommends mask wearing and social distancing by keeping six feet away from other people and limiting contact with others outside your household, whether indoors or outdoors.[6]

      New York State implemented extensive restrictions on business and social activities in an effort to reduce viral transmission. As part of these restrictions, indoor dining was not permitted in New York City from March 17, 2020 through September 29, 2020. On September 30, 2020, new rules from the Governor went into effect allowing New York City restaurants to resume

---

[1] New York Covid Map and Case Count, N.Y. TIMES (updated Oct. 14, 2020), https://www.nytimes.com/interactive/2020/us/new-york-coronavirus-cases.html.

[2] CDC COVID Data Tracker, CTRS. DISEASE CONTROL & PREVENTION (updated Oct. 14, 2020), https://covid.cdc.gov/covid-data-tracker/#cases_casesinlast7days.

[3] Governor Cuomo Announces Lowest Number of Deaths and Hospitalizations since COVID-19 Pandemic Began, NY.GOV (June 5, 2020), https://www.governor.ny.gov/news/governor-cuomo-announces-lowest-number-deaths-and-hospitalizations-covid-19-pandemic-began.

[4] Scientific Brief: SARS-CoV-2 and Potential Airborne Transmission, CTRS. DISEASE CONTROL & PREVENTION (updated Oct. 5, 2020), https://www.cdc.gov/coronavirus/2019-ncov/more/scientific-brief-sars-cov-2.html.

[5] See id.

[6] How to Protect Yourself & Others, CTRS. DISEASE CONTROL & PREVENTION (updated Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.

indoor dining at 25 percent capacity, subject to certain other restrictions. One of those restrictions is that there can be no service after midnight (the "midnight close rule").[7]

## II. The Parties' Positions

Plaintiff brings suit challenging the midnight close rule. Plaintiff is a food service establishment operating in Brooklyn, New York. Historically, it generates a substantial percentage of its revenue from sales after midnight. Plaintiff alleges that the midnight close rule (i) violates its substantive due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and (ii) is an arbitrary and capricious action under New York's Article 78. Plaintiff sought a preliminary injunction to enjoin Governor Cuomo from enforcing the midnight close rule and any other substantially similar rules.

Plaintiff claims that the midnight close rule violates its substantive due process rights because the rule arbitrarily curtails its right to do lawful business. Plaintiff argues that the rule is arbitrary because there is no reason to think that COVID-19 transmission in restaurants is more likely to occur after midnight. Plaintiff further argues that the rule is arbitrary because it applies only to New York City, while other areas of New York experiencing increasing infection rates, like Rockland County, are not so restricted. Plaintiff's business is struggling, and plaintiff believes that without the midnight close rule, it would stand a chance of surviving but, with the rule, it will be a matter of months before it is forced to close.

The Governor responds that the midnight close rule, like the other restrictions on social and business activities this year, seeks to balance industry needs while avoiding the congregating and mingling that increases COVID-19 transmission. The virus spreads more easily indoors and

---

[7] Other restrictions include: no bar service, patrons must have temperature checked at the door, patrons must wear masks when not seated at a table, one member of each party must provide contact information to aid in contact tracing, tables must be placed six feet apart, and the restaurant must satisfy enhanced air filtration, ventilation, and purification standards.

people cannot wear masks while they are eating and drinking.  The rule attempts to mitigate the risk that people will gather for a longer period of time or will drink more alcohol over the course of the night and neglect social distancing rules.  The Governor further explains that New York City is being treated differently because it is the most densely populated region in the state and was the hardest hit by the pandemic.

In reply, plaintiff points out that other restrictions on indoor dining, including capacity limits, already mitigate the risk of mingling.  Restaurants that resume indoor dining are subject to several restrictions and enforcement of those other restrictions will not decline after midnight.  Plaintiff further argues that the effect of alcohol is irrelevant because the rule restricts dining service, not just alcohol service, and applies equally to restaurants that do not serve alcohol.  As to New York City's population density, plaintiff urges that this factor is irrelevant because the density within restaurants is restricted by existing capacity regulations.

## DISCUSSION

A party seeking to enjoin government action "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  Geller v. de Blasio, No. 20-CV-3566, 2020 WL 2520711, at *2 (S.D.N.Y. May 18, 2020) (quoting Trump v. Deutsche Bank AG, 943 F.3d 627, 640 (2d Cir. 2019), rev'd and remanded sub nom. on other grounds, Trump v. Mazars USA, LLP, 140 S. Ct. 2019 (2020)).

Where a party seeks a "mandatory preliminary injunction" that will modify the status quo, or where the requested injunction will provide the party substantially all the relief it seeks, a heightened standard applies, and the movant must demonstrate a "clear or substantial" likelihood of success on the merits and make a "strong showing" of irreparable harm.  Yang v. Kosinski,

4

960 F.3d 119, 127 (2d Cir. 2020). This comports with "the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." Able v. United States, 44 F.3d 128, 131 (2d Cir. 1995).

I assumed *arguendo* that the less rigorous standard applied for purposes of this motion.

**I.    Plaintiff's Substantive Due Process Claim**

    A.     Likelihood of success on the merits

As an initial matter, the parties disagree on the applicable standard of review for plaintiff's due process claim. The Governor argues that the question is whether there is a rational basis for the midnight close rule, and that plaintiff must negate every conceivable basis which might support it. Plaintiff acknowledges that it may not make any difference to the outcome of the case but suggests that the proper analysis comes from the Supreme Court's decision in Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11 (1905).

As I explained in my oral ruling, I agree that Jacobson sets out the relevant standard.[8] Jacobson predates rational basis review,[9] is still good law, and is the most on-point authority for a due process challenge to emergency measures during a public health crisis.

Under Jacobson, the state may curtail constitutional rights in response to a society-threatening epidemic so long as the measures have at least some "real or substantial relation" to

---

[8] I also explained that my decision on the motion would be the same under Jacobson or rational basis review. Under rational basis review, the restriction must "meet the (unexacting) standard of rationally advancing some legitimate governmental purpose." Reno v. Flores, 507 U.S. 292, 306 (1993). For the reasons described below, the midnight close rule is rationally related to the protection of public health, a legitimate governmental purpose, and thus easily satisfies this standard.

[9] For example, Jacobson was decided the same year as Lochner v. New York, 198 U.S. 45 (1905), overruled in part by Ferguson v. Skrupa, 372 U.S. 726 (1963), the quintessential case on economic substantive due process, a doctrine that has been litigated at length in the intervening years.

5

the public health crisis and are not "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." Jacobson, 197 U.S. at 38. "Courts may ask whether the state's emergency measures lack basic exceptions for 'extreme cases,' and whether the measures are pretextual – that is, arbitrary or oppressive. At the same time, however, courts may not second-guess the wisdom or efficacy of the measures." In re Rutledge, 956 F.3d 1018, 1028 (8th Cir. 2020) (quoting In re Abbott, 954 F.3d 772, 784-85 (5th Cir. 2020) (quoting Jacobson, 197 U.S. at 38)); see also Luke's Catering Serv., LLC v. Cuomo, No. 20-CV-1086S, 2020 WL 5425008, at *6-13 (W.D.N.Y. Sept. 10, 2020) (applying the "highly deferential Jacobson standard" and holding that plaintiff did not demonstrate that Cuomo's executive orders imposing a 50-person limit on non-essential gatherings had no "real or substantial relation" to public health or was "beyond all question, a plain palpable invasion of [plaintiff's] rights"). This approach accords with the general principle that "[s]ubstantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill advised." Cunney v. Bd. of Trustees of Vill. of Grand View, N.Y., 660 F.3d 612, 626 (2d Cir. 2011).

As Chief Justice Roberts recently cautioned, "[t]he precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement." S. Bay United Pentecostal Church v. Newsom, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring) (denying application for injunctive relief enjoining enforcement of the Governor of California's executive order limiting attendance at places of worship). When elected officials "'undertake[] to act in areas fraught with medical and scientific uncertainties,' their latitude 'must be especially broad.'" Id. (quoting Marshall v. United States, 414 U.S. 417, 427 (1974)). The unelected federal judiciary, lacking

the "background, competence, and expertise to assess public health," should not second-guess these actions, particularly where "a party seeks emergency relief in an interlocutory posture, while local officials are actively shaping their response to changing facts on the ground." Id.

Here, I found that plaintiff likely cannot establish that the midnight close rule does not have a real and substantial relation to the COVID-19 pandemic. It is by now well-understood that the virus spreads more easily indoors and when people gather in close proximity. Social distancing and mask wearing are among the few tools available to slow its spread, but these precautions are impacted by indoor dining. Diners cannot wear masks while they eat and drink, and indoor dining necessarily brings individuals from different households together in a restaurant, even if at a distance. Thus, indoor dining poses a greater risk of virus transmission than many other activities.

The Governor believes that restricting late-night service will help mitigate the risks by reducing the likelihood that patrons will mingle indoors without masks for an extended period of time. The Governor further believes that this is necessary in New York City and not elsewhere because of the City's high population density and experience with the virus earlier this year. Even though restaurants have capacity restrictions, New York's population density is relevant because it makes it more likely that an outbreak linked to indoor dining will spread throughout the community at large.

Although plaintiff questions the wisdom of the midnight close rule with several arguments for why it may be unnecessary or ineffective, I afford great deference to the Governor's judgment. See S. Bay United Pentecostal Church, 140 S. Ct. at 1613. "The possibility that the [state's] belief may be wrong, and that science may yet show it to be wrong, is not conclusive; for the legislature has the right to pass laws which . . . are adapted to prevent

7

the spread of contagious diseases." Jacobson, 197 U.S. at 35; see also Connecticut Citizens Def. League, Inc. v. Lamont, No. 3:20-cv-646, 2020 WL 3055983, at *11 (D. Conn. June 8, 2020) ("[C]ourts owe great deference to the protective measures ordered by government officials in response to the COVID-19 crisis, not simply because the virus has lethal consequences but also because the virus acts in unknown ways that engender uncertainty about what scope of protective measures are warranted.").

In this pandemic, regulating to protect public health is fraught with medical and scientific uncertainty. There is room for significant disagreement about the wisdom and efficacy of the Governor's protective measures. But it is not the role of the courts to second-guess the Governor's approach. Jacobson does not "require that courts take a piecemeal approach and scrutinize individual" aspects of a rule designed to protect public health or "otherwise create an exception for particular" individuals impacted by it. See In re Rutledge, 956 F.3d at 1029. It is enough that the restrictions have a real and substantial relation to public health.

I also found that plaintiff likely cannot establish that the midnight close rule invades its fundamental rights. Plaintiff alleges an infringement of its right to conduct lawful business. But "the right to conduct a business, or to pursue a calling, may be conditioned." New Motor Vehicle Bd. of California v. Orrin W. Fox Co., 439 U.S. 96, 107 (1978). "[T]he due process clause is [not] to be so broadly construed that the Congress and state legislatures are put in a strait jacket when they attempt to suppress business and industrial conditions which they regard as offensive to the public welfare." Id. (citation omitted); see also Williamson v. Lee Optical of Oklahoma Inc., 348 U.S. 483, 488 (1955) ("The day is gone when this Court uses the Due Process Clause of the Fourteenth Amendment to strike down state laws, regulatory of business

8

and industrial conditions, because they may be unwise, improvident, or out of harmony with a particular school of thought.").

The right to conduct business or engage in a chosen profession does not entitle plaintiff to operate its business free from governmental regulation. Instead, "[t]his type of due process claim requires a showing that the plaintiff has been prevented from exercising his right" completely. Schultz v. Inc. Vill. of Bellport, 479 F. App'x 358, 360 (2d Cir. 2012) (citing Conn v. Gabbert, 526 U.S. 286, 291–92 (1999) (recognizing that cases in this area "all deal with a complete prohibition of the right")).

I found that plaintiff cannot show that it has been prevented from operating its business completely because the midnight close rule does not prohibit plaintiff's operations, it just restricts them. Plaintiff has been operating under more severe restrictions for months and is in a better position under the new rule than the prior unchallenged restrictions. Plaintiff claims that the rule prevents it from generating *enough* business to stay in business. But even if that is the ultimate effect of the rule, it is not enough to constitute a violation of plaintiff's due process rights.

For these reasons, I held that plaintiff is unlikely to succeed on its claim that the midnight close rule arbitrarily infringes its due process rights.

B.  Irreparable harm, balance of equities, and the public interest

I further found that the remaining factors for an injunction weigh against plaintiff. Although the loss of plaintiff's business is likely an irreparable harm, enjoining the actions of state elected officials in matters that affect public safety also constitutes an irreparable harm. See Maryland v. King, 567 U.S. 1301, 1301 (2012). The balance of these harms weighs against plaintiff because, while "[p]laintiff[] bear[s] the very real risk of losing [its] business[], the

9

Governor's interest in combatting COVID-19 is at least equally significant." League of Indep. Fitness Facilities & Trainers, Inc. v. Whitmer, 814 F. App'x 125, 129 (6th Cir. 2020).

The public interest also weighs against plaintiff's injunction. Nearly 24,000 people have died from this virus in New York City alone. The state's elected officials must be allowed to exercise their judgment to protect the public health as restrictions on activities are slowly lifted.

I also noted that the Governor is certainly aware of the potential consequences of a wrong or overly protective decision on restrictions during this pandemic. Those consequences are not only political, although the political implications are obvious and growing daily as more people chafe at the restrictions while the death rate continues to decline. New York City is in the middle of an economic crisis brought about by the pandemic. Much has been written about the falling real estate prices, vacant store fronts, fleeing residents, and the potential permanent or long-term demise of the entertainment and restaurant industries in New York.[10] I explained that I have no doubt that prolonging the restrictions on businesses and restaurants will make economic recovery more difficult. Indeed, it may be that continuing restrictions on business will turn New York City into a very different, even desolate, place compared to how it was before the pandemic. But where good faith arguments can be made on both sides of the many issues raised by the pandemic, it is up to the Governor, not the courts, to balance the competing public health and business interests.

---

[10] See, e.g., Konrad Putzier & Will Parker, How Covid Broke Times Square, the Heart of New York's Economy, WALL ST. J. (Oct. 2, 2020), https://www.wsj.com/articles/how-covid-broke-times-square-the-heart-of-new-yorks-economy-11601656831; Dana Rubinstein, 'We're at War': New York City Faces a Financial Abyss, N.Y. TIMES (Sept. 28, 2020), https://www.nytimes.com/2020/09/28/nyregion/nyc-budget-coronavirus.html; Katherine Clarke, Covid-19 Pounds New York Real Estate Worse than 9/11, Financial Crash, WALL ST. J. (Aug. 20, 2020), https://www.wsj.com/articles/covid-19-new-york-real-estate-11597939146.

## II.    Plaintiff's Article 78 Claim

Plaintiff also sought the injunction under its state law claim under N.Y. C.P.L.R. Article 78, claiming that the midnight close rule constitutes an arbitrary and capricious action by the Governor.  The Governor argued that I cannot hear the claim because, *inter alia*, Article 78 claims can only be brought in state court.

I explained that an Article 78 claim can be interpreted as seeking something akin to a writ of prohibition, and thus federal courts can exercise supplemental jurisdiction over such claims under the All Writs Act, 28 U.S.C. § 1651.  See Yonkers Racing Corp. v. City of Yonkers, 858 F.2d 855 (2d Cir. 1988) (affirming district court's decision authorizing removal of an Article 78 proceeding under the All Writs Act).  But they rarely do so.  See E. End Eruv Ass'n, Inc. v. Town of Southampton, No. CV 13-4810, 2014 WL 4826226, at *18 (E.D.N.Y. Sept. 24, 2014) (collecting cases).  This is because Article 78 is a "novel and special creation of state law" presenting "a purely state procedural remedy."  Camacho v. Brandon, 56 F. Supp. 2d 370, 379-80 (S.D.N.Y. 1999).  It reflects a strong "state preference to try Article 78 claims in state court." Carver v. Nassau Cty. Interim Fin. Auth., 730 F.3d 150, 155 (2d Cir. 2013).  That preference presents a compelling reason to deny supplemental jurisdiction in most cases.

The reasons for denying supplemental jurisdiction were particularly compelling here. Plaintiff challenges a newly enacted rule that the state courts have not had an opportunity to analyze.  See Kent v. New York, No. 11-CV-1533, 2012 WL 6024998, at *11 (N.D.N.Y. Dec. 4, 2012) ("[T]his Court declines to exercise supplemental jurisdiction over plaintiffs' Article 78 claim because to do so would require this Court to interpret state law before the New York State courts have an opportunity to analyze and resolve the issues.").  And plaintiff's federal claim is unlikely to succeed on the merits, further cautioning against the exercise of supplemental

11

jurisdiction over plaintiff's state law claim.  See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) (noting that when "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims").

Because I declined to exercise supplemental jurisdiction over plaintiff's Article 78 claim, it thus could not provide a basis for plaintiff's preliminary injunction.

_____<br>U.S.D.J.

Dated: Brooklyn, New York
       October 15, 2020